**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LATUNJA JOHNSON, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | **Case No.:  2:15-cv-02371-RDP** |
| | } | |
| CITY OF BESSEMER, ALABAMA, et al., | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

## I.      Introduction

This matter is before the court on motions to dismiss filed by Defendant City of Bessemer (Doc. # 37) and Defendants Rutledge and Hudson (Doc. # 38).  This case arises from tragic events which occurred on November 1 and 2, 2014.  Plaintiff, on behalf of Sheneque Proctor ("Proctor"), brings claims against individual Defendants as well as the City of Bessemer ("City") related to Proctor's treatment (and lack of medical treatment) at the City Jail.  The City and these two individuals -- who supervised jailers working on the night Proctor died -- have moved to dismiss claims against them.  After careful review, the court finds Defendants' motions to dismiss are due to be granted.

## II.      Background[1]

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008).  A plaintiff's allegations may or may not be the "actual facts" in a case, but they are accepted as true for purposes of evaluating a motion to dismiss.  Accordingly, the facts set out herein are taken primarily from Plaintiff's Second Amended Complaint (Doc. # 36), and they are assumed true for purposes of this Memorandum Opinion.

While other individual Defendants in this action moved for summary judgment in a separate motion, the court does *not* consider the Rule 56 record when evaluating Defendants' motions to dismiss.  Instead, the court relies only on the factual allegations in Plaintiff's Second Amended Complaint for purposes of this memorandum opinion. Specifically, in its memorandum opinion regarding the individual Defendants' motion for summary judgment, the court found that the Rule 56 record included no evidence that any jailer violated Proctor's constitutional rights.  The

Proctor was arrested on November 1, 2014 and was taken to the Bessemer City Jail. (Doc. # 36 at ¶ 13). At the jail, Proctor was noticeably under the influence of drugs. (*Id.* at ¶ 14). Shortly after she was booked into the jail, Proctor fell unconscious. (*Id.* at ¶ 18). Defendant Goodwin noticed Proctor's condition over an hour later. (*Id.* at ¶ 19). Defendant Goodwin could not get Proctor to respond. (*Id.* at ¶ 20). Rather than seek medical attention for Proctor, Defendant Goodwin pushed Proctor over onto her side. (*Id.*). Defendant Goodwin informed the other jailers named in this action about Proctor's condition. (*Id.* at ¶¶ 21-22). None of the jailers sought medical assistance for Proctor. (*Id.* at ¶ 24). Instead, Proctor died sometime after 3:00 a.m. on the morning of November 2, 2014. (*Id.* at ¶ 25).

In addition to bringing suit against the individual jailers (who are not parties to this motion), Plaintiff maintains that Proctor's death was caused by customs and policies of Defendant City of Bessemer and by the deliberate indifference of Defendants Rutledge and Hudson, who are supervisors of the jailers. (*Id.* at ¶ 28). The Bessemer City Jail does not employ medical personnel, but instead relies upon its jailers to assess the medical needs of inmates. (*Id.* at ¶¶ 31-32). City policymakers, including Defendants Rutledge and Hudson, did not provide jailers with any training and supervision related to the medical needs of inmates. (*Id.* at ¶ 39). After Proctor's death, Bessemer policymakers, including Defendants Rutledge and Hudson, did not re-train or disciple the detention officers on duty at the time of Proctor's death. (*Id.* at ¶¶ 41-42). City policymakers and supervisory officials did not provide Bessemer jailers with training regarding medical care for inmates, the rights of inmates to medical care, or treatment of unconscious inmates and inmates experiencing drug overdoses. (*Id.* at ¶ 46).

---

court is cognizant of this finding and the undisputed facts presented by the Rule 56 evidence. However, the Rule 56 record is *not* before the court for purposes of the motions to dismiss addressed in this opinion, and the court considers only the factual averments in Plaintiff's Second Amended Complaint for purposes of its analysis here.

### III.    Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Still, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.  The Supreme Court has identified "two working principles" for a district court to use in applying the facial plausibility standard.  First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when

they are "couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

## IV. Analysis

### A. Plaintiff's Claim Against Defendant City of Bessemer

Plaintiff contends she is due money damages based on what she contends is an unconstitutional policy of the City. (Doc. # 36). Specifically, Plaintiff alleges that Bessemer failed to properly train City jailers regarding medical care for inmates. (*Id.* at ¶ 46). "The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). As explained in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Id.* (citing *Monell*, 436 U.S. at 694-95). So, to hold a municipality liable, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.

2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A policy is defined as a "decision that is officially adopted by the municipality. . . ." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)). A custom is defined as a "practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 438 U.S. at 690-94).

Here, even if Plaintiff shows her constitutional rights were violated, in order to prevail on her claim against the City, she must demonstrate it had an unconstitutional policy or custom. *See Wilson v. Tillman*, 613 F. Supp. 2d 1254, 1266 (S.D. Ala. 2009) ("[T]he city of [Bessemer] is not automatically liable under § 1983 even if it inadequately hired, trained or supervised its police officers and those officers violated [Plaintiff's] unconstitutional rights."). "To show an unconstitutional policy or custom, [P]laintiff must identify the policy or custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (*en banc*)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999)).

Plaintiff has not alleged a factual basis to support a claim that the Defendant jailers acted consistently with a policy formally directing them not to provide care to unconscious inmates. "For obvious reasons, Plaintiff did not aver any facts relating to a formal policy adopted by the City commanding its [jailers] to" leave ailing inmates untended. *Smith v. City of Sumiton*, No. 12-cv-03521, 2013 WL 3357573, at *3 (N.D. Ala. July 2, 2013), *aff'd* 578 Fed. Appx. 933 (11th Cir. 2014) (*per curiam*). Likewise, Plaintiff has not stated with any factual specificity a custom practiced by the City allowing such behavior on the part of its jailers.

In her brief, however, Plaintiff argues that the City can be held liable because it has established a policy or custom of deliberate indifference to the rights of others by knowing of a need to train or supervise jailers, but purposely failing to take action. (Doc. # 36). "A municipality's failure to correct [] constitutionally offensive actions… may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards" the misconduct. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, to prove the existence of purported policy or custom of deliberate indifference by the City, Plaintiff must show that the City had notice of a need to adequately train or supervise jailers but purposefully did nothing. *See Sumiton*, 2013 WL 3357573, at *4 (quoting *Gold*, 151 F.3d at 1350) ("To show 'deliberate indifference,' a plaintiff must present some evidence to demonstrate 'that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'"). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." *Gold*, 151 F.3d at 1351. And, a municipality often can reasonably rely on its officers' common sense rather than implementing formal training: "[w]here the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Walker v. New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) (internal quotations omitted); *see also Sewell*, 117 F.3d at 490 (stating that the Eleventh Circuit is "persuaded that the Second Circuit's interpretations of *City of Canton* is correct").

Plaintiff has failed to plead the existence of any pattern of misconduct by the correctional officers which caused the City's lack of training to rise to the level of deliberate indifference. Plaintiff's Second Amended Complaint makes only a conclusory allegation that past constitutional violations occurred as a result of deficient training. (*See* Doc. # 36 at ¶ 38 ("[F]rom prior incidents, City policymakers, including [D]efendants Rutledge and Hudson, were aware of the need for jailer training.")). This conclusion alone, without any supporting factual averments, simply does not sufficiently plead the existence of any pattern of misconduct. *Twombly*, 550 U.S. at 555, 557 (requiring pleadings to contain more than "labels and conclusions" or "naked assertion[s]"); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329 n. 21 (11th Cir. 2015) (allegation that there had been "[n]umerous police shootings of people with mental illnesses" did not plausibly plead that Sheriff's Office was on notice that its training was inadequate, because Plaintiff failed to allege any "factual enhancement" suggesting those shootings gave rise to "similar constitutional violations").

Plaintiff also argues that she has alleged a "single incident" deliberate indifference claim. The Supreme Court in *Canton* suggested that in situations where the need to train on constitutional limitations is "so obvious" that failure to do so could be characterized as "deliberate indifference," prior notice is not required. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

> In leaving open the possibility that municipal liability could be triggered by evidence of a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation… the *Canton* Court simply hypothesized that, in this narrow range of circumstances, the violation may be a highly predictable consequence of the failure to train and thereby justify a finding of "deliberate indifference" by policymakers.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 398 (1997). A plaintiff seeking to make such a claim faces a high hurdle. *See Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir. 1995) (finding no obvious need to trail jail staff on how to care for mentally ill inmates or dispense medication prescribed by a healthcare provider); *Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (failure to train jail staff in emergency medical procedures did not give rise to single-incident liability). Plaintiff's Second Amended Complaint fails to clear that hurdle here.

As addressed above, a municipality may reasonably rely on its officers' common sense in certain situations. The averments of Plaintiffs' Second Amended Complaint present such a situation. Plaintiff alleges that Proctor was obviously unconscious for hours, and that the Defendant jailers did not alert medical personnel or otherwise provide assistance. A municipality may reasonably rely on its officers to use their common sense and address such a situation, and the City's failure to train the Defendant jailers what specifically to do under those circumstances does not amount to deliberate indifference.

In order to allege a single-incident claim *the need to train on constitutional limitations* must be "so obvious" that failure to do so could be characterized as "deliberate indifference." *City of Canton, Ohio*, 489 U.S. at 390. Here, Plaintiff alleges that Proctor was unconscious in the Bessemer jail for hours and never received medical care. Taking these allegations as true, as the court must here, Proctor's *condition* may have been obvious.[2] But that does not mean that Plaintiff has pled the existence of an obvious need to train jailers on the standards of constitutional care. To the contrary, Plaintiff has failed to plausibly plead that it should have

---

[2] Again, for purposes of this motion, the court accepts this allegation as true. However, to be clear, the Rule 56 evidence presented on the motion for summary judgment filed by the jailers indicates that the nature of Proctor's condition was in fact not obvious.

been obvious to the City that the Defendant jailers would violate Plaintiff's constitutional rights by failing to provide any care to Proctor while she was unconscious.

**B. Plaintiff's Claims Against Defendants Rutledge and Hudson**

Defendant Rutledge was employed as the police chief of the City during all relevant times, and had supervisory responsibilities with respect to the management of the city jail. (Doc. # 36 at ¶ 6). Defendant Hudson was employed by the City as the police and jail training director at all relevant times. (*Id.* at ¶ 7). It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.' "*Hartley by Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1394 (11th Cir.1994)). Instead, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir.2003) (quoting *Braddy v. Fla. Dep't of Labor & Empl. Sec.,* 133 F.3d 797, 802 (11th Cir.1998)). In determining when a supervisor can be held liable in his individual capacity, the Eleventh Circuit has held that "[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir.1988). Here, Plaintiff has not alleged that Defendants Rutledge and Hudson personally participated in the alleged violations. (*See* Doc. # 36).

However, Plaintiff will survive Defendant's motion to dismiss if she can establish a causal connection between Defendant Burnett's actions and the alleged constitutional deprivation. In the Eleventh Circuit, a causal connection can be shown in three ways:

> "[B]y evidence of (1) 'a custom or policy that results in deliberate indifference to constitutional rights,' (2) 'facts that support an inference that the supervisor[ ]

directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so,' or (3) 'a history of widespread abuse' that notified the supervisor of the need to correct the alleged deprivation, but [s]he failed to do so."

*Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir. 2009) (quoting *West v. Tillman,* 496 F.3d 1321, 1327 (11th Cir. 2007)). In order for a claimant to allege a history of widespread abuse, the abuse must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Doe v. Sch. Bd. of Broward Cnty., Fla.,* 604 F.3d 1248, 1266 (11th Cir.2011) (quoting *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)).

Here, Plaintiff's Second Amended Complaint fails to show a causal connection. As addressed above, Plaintiff's Second Amended Complaint does not allege the existence of a custom or policy that results in deliberate indifference to constitutional rights. Moreover, Plaintiff has not alleged any facts which would support an inference that either Rutledge or Hudson directed any jailer to commit a constitutional violation. And, apart from conclusory allegations, Plaintiff has not alleged that Rutledge and Hudson knew that the any jailer would act unlawfully and failed to stop them from doing so.[3] Finally, as addressed above, Plaintiff has not alleged any facts which plausibly plead the existence of a history of widespread abuse in this area. Accordingly, the motion to dismiss filed by Defendants Rutledge and Hudson is due to be granted.

---

[3] Plaintiff's Second Amended Complaint alleges that "it is highly predictable that constitutional violations will occur if jailers" are not provided with basic medical training and trained regarding inmates' right to medical care. (Doc. # 36 at ¶¶ 34, 35). However, Plaintiff fails to allege any facts which would support this inference. While Plaintiff has alleged that the Defendant jailers did not receive medical training or training on constitutional standards of care, that does not raise the inference that Rutledge and Hudson knew that any jailer would decide not to tend to an obviously unconscious inmate and failed to stop them. As addressed above, Rutledge and Hudson could reasonable rely on the jailers' common sense response to any obvious medical need, and Plaintiff's Second Amended Complaint fails to plead that Rutledge and Hudson knew that any jailer would act in violation of Proctor's constitutional rights.

### C.    Qualified Immunity

In their motion to dismiss, Rutledge and Hudson also argue that they are entitled to qualified immunity.  (Doc. # 28 at ¶ 12).  The court determines whether a defendant is entitled to qualified immunity by engaging in a three-step analysis. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136-37 (11th Cir. 2007).  The initial burden is on the official claiming qualified immunity to establish that he was acting within his discretionary authority.  *Id.*  Upon that initial showing, the burden shifts to the plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Id.* at 1136-37 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Finally, "the plaintiff must show that the violation was 'clearly established.'"  *Id.* at 1137; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." (citing *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001) (en banc)).

As addressed above, Plaintiff's Second Amended Complaint does not plausibly plead that Defendants Rutledge and Hudson violated any constitutional right of Proctor's, let alone one that was clearly established.  Accordingly, Defendants Rutledge and Hudson are entitled to qualified immunity, and their motion to dismiss is further due to be granted on that ground.

### D.    The Defendant Jailers' Motion for Summary Judgment

The Defendant jailers filed a motion for summary judgment shortly after Defendants City of Bessemer, Rutledge, and Hudson filed the motions to dismiss addressed in this memorandum opinion.  (Docs. # 52, 53).  The Defendant jailers' motion for summary judgment is due to be

granted because the Rule 56 record contains no evidence that a constitutional violation occurred.[4] It is axiomatic that Defendants City of Bessemer, Rutledge, and Hudson may only be liable for a constitutional violation if a constitutional violation actually occurred. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("only when it is clear that a violation of specific rights has occurred can the question of § 1983 liability municipal liability for injury arise.").

The court has not considered the Rule 56 evidence presented by the Defendant jailers' motion for summary judgment in evaluating the motions to dismiss addressed in this opinion. Instead, the court notes only that it has found, in a separate opinion, that there is no Rule 56 evidence which would show that Defendant jailers violated Proctor's constitutional rights. Accordingly, even if Defendants' motions to dismiss were denied (and to be sure, they should be granted), Plaintiff would still be unable to succeed on her claims against Defendants Rutledge, Hudson, and City of Bessemer, because the Rule 56 record -- including jail video and testimony of the individual jailers -- does not include any evidence which would suggest that a constitutional violation occurred.

---

[4] The Defendant jailers' motion for summary judgment will be granted by a separate order entered contemporaneously with the opinions entered this day.

## V.     Conclusion

For the reasons explained above, and after careful review, the court concludes Defendants' motions to dismiss are due to be granted.[5]  A separate order will be entered.

**DONE** and **ORDERED** this June 22, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[5] In some instances, it is appropriate for a court to grant a plaintiff the opportunity to amend her complaint in response to a motion to dismiss, rather than dismiss the action.  However, such a remedy would be futile here.  As addressed above, the Rule 56 record related to the jailers' motion for summary judgment does not include any evidence which would show that any jailer violated Proctor's constitutional rights.  Accordingly, even if Plaintiff were given another opportunity to amend her complaint, and that complaint were sufficient to survive a motion to dismiss, she would nonetheless find herself in a situation where the Rule 56 record does not present any evidence of a constitutional violation.  Because this would leave Plaintiff's claims against Rutledge, Hudson, and the City ripe for dismissal by a motion for summary judgment, Plaintiff will not be granted the opportunity to amend her complaint.